## UNITED STATES v. CITIZENS LIGHT, POWER & WATER CO.

No. 1728–KA.

First Division. Ketchikan.

March 9, 1935.

W. A. Holzheimer and Geo. W. Folta, U. S. Pros. Atty., both of Juneau, for plaintiff.

A. H. Ziegler, of Ketchikan, for defendant.

ALEXANDER, District Judge.

This suit was instituted by plaintiff to collect taxes from the defendant for the period from January 1, 1926, to December 31, 1933, on its wharf and warehouse business under section 176, C.L.A.1933 (section 2569, C.L.A.1913), imposing a tax "on public docks, wharves, and warehouses, ten cents per ton on freight handled or stored."

This cause was submitted to the court under the provisions of sections 3688–3690, C.L.A.1933 (sections 1080–

1082, C.L.A.1913), Code of Civil Procedure of Alaska, which declare that parties to a question in controversy which might be the subject of an action in a court of record may submit the same to the determination of such court without action, by setting forth in writing the facts upon which the controversy depends and verifying the same by the oaths of the parties. There is therefore no dispute as to the facts which have been stipulated. The controversy is solely over the legal conclusions which are deductable from the facts and the applicability of the taxing statute (section 176, supra) to these facts; plaintiff contending that under that section the warehouse and wharf operated by defendant are public and therefore subject to the tax of 10 cents a ton on all freight handled over its wharf and stored in its warehouse, the defendant contending that its wharf and warehouse are private and not subject to the tax.

The principal business of the defendant, as its name implies, is a public utility business. It, however, also owns and operates, separate and apart from its other business, and wholly independent of it, a cold storage plant, with the wharf and warehouse in question, adjacent to and in connection therewith.

Its cold storage plant, as operated, comprises: (1) A wharf used by both fishing boats in discharging their cargoes of fresh fish and for the loading of outgoing vessels with fish that have been frozen, mild-cured, or iced in its cold storage plant or warehouse for shipment to the markets; (2) buildings and equipment for the preparation of fish for the market and facilities for handling said products over defendant's wharf; (3) a warehouse, separate and apart from its cold storage plant, used exclusively by the fish buyers operating on said wharf, for the reception, storage, and freezing of fish until it is shipped to the markets. The warehouse is located on or immediately adjacent to the wharf, and the cold storage plant immediately back of and connected therewith.

Before January 1, 1926, the defendant admittedly operated the wharf and warehouse in question as a public wharf and paid the tax thereon which it now seeks to avoid. Up to that time it used the property for the joint handling of its fish or cold storage business and general freight. Subsequently the fish business increased to such an extent that the wharf facilities were inadequate to accommodate a general freight business and its own business of storing, freezing, and preparing fish for the market, so that defendant thereafter limited the use of its wharf to the handling of fish and fish products and at the same time discontinued the payment of the tax in question, on the assumption that this step had changed the nature of its wharf and warehouse from a public to a private one. It also changed, on its books, the name of the charge it had been making and still makes for handling freight over its wharf from "wharfage" to "handling charges," but continued the charge at the same rate previously paid.

It is admitted that under the new arrangement fishermen and the fishing public generally are not only allowed the use of the wharf for the purpose of discharging and selling their catches of fish without let or hindrance, but that the defendant has, during the entire period mentioned, from January 1, 1926, continuously encouraged and solicited all fishermen and the fishing public generally to use its wharf for the purpose of selling their fish, in order, primarily, that it might keep its cold storage plant running to capacity and its other facilities occupied. The fish are bought at the wharf by fish buyers, who are allowed to use the wharf, warehouse, and buildings and the facilities thereof for the reception and preparation of fish by them in the several ways mentioned. As many of the fish buyers are allowed to use the wharf, warehouse, and buildings as can be accommodated by the space available, but there are no restrictions on the number of fishermen who are allowed to use the wharf to sell and discharge their cargoes of fish. After the fish are frozen, mild-cured, or iced, the buyers ship them to the markets over the wharf, for which a charge of $1

per ton is made, and this charge is designated as "wharfage" in the manifests covering the shipments, but on the books of the defendant as "handling charges," although the same charge.

The buyers operating on the dock have an arrangement with the defendant whereby they pay for the use of its wharf and warehouse and facilities used in connection therewith a so-called "rental charge" of $1 per ton for fish handled by them over said wharf and through said warehouse, and also pay to the defendant an additional charge for the freezing and storage of fish in its cold storage plant. The defendant does not buy or handle any fish on its own account, but confines its business exclusively to the handling, storage, and freezing of fish for the buyers operating on its wharf, and the charge for "wharfage" is identical with the wharfage charge made by all public docks on freight handled by them.

The questions presented to the court for determination are:

(1) Is a warehouse which receives fish from the public generally, for freezing and storage for hire, a public warehouse?

(2) Is a wharf operated solely in connection with and as an incident to a public warehouse a public wharf, under section 176, C.L.A.1933, and subject to the tax of 10 cents per ton on freight so handled or stored?

The warehouse operated by the defendant corporation is open to the public generally for the freezing and storage of fish, and in this respect is similar to grain elevators, cotton warehouses, and the like, and cannot be divested of its public character by the fact that it is privately owned. Nor does the fact that it handles but a single commodity or type of freight, as distinguished from general freight, give it this distinction. In this day and age we have grain elevators or warehouses for the storage of grain, cotton warehouses for the storage and handling of cotton, and many other classifications of warehouses catering to the public for

the sole and exclusive storage and handling of various other products, but the fact that they only handle one commodity or product does not divest them of their public character, if they are operated for the general accommodation and use of the public dealing in that particular product or commodity.

It is not necessary that a wharf or warehouse handle all commodities or freight indiscriminately for every branch of the public in order to make it a public wharf or warehouse, nor that it be a public utility with its rates and mode of operation controlled by the state or some public agency, in order to so classify it. In fact, it has been numerously decided that even public utilities, such as railroads, steamship lines, and others may confine their business to such commodities or classifications of business as they may choose. Railroads, even while carrying express, have been permitted to choose their customers or agencies · through which they may deal, or to confine their business exclusively to either the carriage of freight or passengers, and to deny to their competitors and others the use of their facilities in any way inimical to their own interests. Hence I cannot agree with defendant's contention that, because the property in question was restricted solely to the fish business or the use of its wharf and warehouse denied to other freight or that other fish buyers were denied the right to obtain space thereon or that its competitor was denied the right to go on its dock for the purpose of soliciting business, divested its wharf and warehouse of their public character. Nor would the fact that the cost of maintaining the same exceeds the revenue derived by the defendant therefrom, if such be the fact, have any pertinency to the issues involved here.

It is not the ownership of such property that determines its public character, but rather the use to which it is put. Here the defendant is operating a cold storage plant, and while its wharf, warehouse, and other facilities were used in connection therewith, the fishing public were not only invited, but encouraged, to use them, and did so without discrimination, as a feeder to its cold storage business.

The plaintiff contends that both the questions involved have been decided by our own Circuit Court of Appeals in its favor, by the cases of John J. Sesnon Co. v. U. S., 182 F. 573, 579, and Northern Commercial Co. v. U. S., 217 F. 30, 31.

The defendant as stoutly maintains that the proper interpretation of these cases sustains its position. I agree with both in this far, that the two above cases, both arising in this territory and under the same statute in question here, should be determinative of the questions involved, when properly applied.

The defendant points out that the statute provides a tax of "Ten cents per ton for freight handled or stored" and that it does not say "All goods, wares or merchandise or property handled or stored." It simply makes a tax due and payable on "freight." It then asks, "What is 'freight'?" and answers this by citing Hagar v. Donaldson, 154 Pa. 242, 25 A. 824, 825, "In mercantile law, freight is understood to be the hire or compensation which the owner of a ship is entitled to receive for the carriage of goods of another" [4 Words and Phrases, First Series, page 2973], and contends that "Fish, the fruit of the small fisherman's labor, delivered to the plant of defendant on small boats, in a common carrier, is not 'freight' and especially not freight in the sense used or intended in the statute under which this controversy exists."

With this I cannot agree. It may be true that fish, as delivered to the wharf and warehouse of defendant, is not "freight," but after its delivery to the wharf and warehouse of defendant and processed and made ready for the market and stored and shipped over its wharf by common carriers to the markets of the world it becomes and is "freight" when thus shipped out over its wharf. No account is taken or charge made by defendant for the fish as received at the defendant's wharf and warehouse, but the account is taken and the charge made for the fish that go out over the wharf of defendant into common carriers, bound for the markets

of the world, and this is the poundage the government claims a tax on.

The defendant further urges that the defendant was not engaged in prosecuting the business of a public wharf or warehouse as defined or intended by the statute. He contends that the fish buyers who occupy all the space in the sheds and use the so-called wharf and warehouse, being the tenants of defendant, are actually carrying on and prosecuting whatever business is prosecuted in the sheds or warehouses and on the wharf, and, if such facilities be held to be a public dock or wharf, the buyers themselves would be responsible for the tax.

There might be some merit in this contention if the buyers who operate on the defendant's wharf and warehouse had any control over such operation, but the evidence is undisputed that they are at best only tenants at will or at sufferance of the defendant; have no control over either the wharf or warehouse, but are, by the defendant, put there for the express purpose of creating business for the defendant's cold storage plant, while the defendant retains absolute control of those facilities.

He then points out that in the Sesnon Case the Court of Appeals approved the trial court's instruction where it instructed the jury: "The question whether the wharf conducted by the defendant was a public or private one depends on how the company has conducted it on the day stated in the information. Were they receiving freight as a lighterage company and as wharfinger indiscriminately from all persons who applied for that accommodation, and charging tolls therefor, why then it may be public; if they were discriminating, or refusing freight from some and accepting it from others, then, of course, it would not be a public wharf. * * * If they only landed freight for their own purposes, for their own uses, why, then, of course, it would be a private wharf, and would not be subject to a license."

He apparently forgets, however, that the Sesnon Case was a criminal prosecution in which the appellant had been

prosecuted for failure to pay the very tax in question, and overlooks the fact that a defendant cannot complain because an instruction may be more favorable to him than he is entitled to. The only part of the above instruction that is pertinent here is contained in the first and last sentences, wherein the court told the jury, "The question whether the wharf conducted by the defendant was a public or private one depends on how the company had conducted it, * * * If they only landed freight for their own purposes, for their own uses, why, then, of course, it would be a private wharf, and would not be subject to a license," which is merely another way of saying that the public or private character of a wharf is to be determined by the way it is conducted or the use to which it is put.

Attention might also be called to the language of the court in this case, wherein it points out that "This statute is a revenue statute, and must be construed in accordance with the rules of construction applicable to such a statute. * * * The intention of the lawmaker is the law. The revenue laws are to be construed liberally, to carry out the purpose of their enactment. * * * The intention of Congress, as expressed in the Act of June 6, 1900, was to levy a license tax upon the prosecution of the business of handling freight in connection with a public dock, wharf, or warehouse, and to the extent of the use of such structure for that purpose."

Neither is the case of Northern Commercial Company v. United States as strong a case on the facts as the one under consideration. There it is admitted that the company's "wharf and warehouse at Fairbanks is on the river bank, at which steamers owned by defendant land and unload the freight belonging to the defendant and its shippers, but that no wharfage charge, dockage charge, or storage charge is made for freight so handled upon said wharf. That the defendant does not accept goods on storage for hire, nor does it permit boats other than its own to land at its warehouse and docks for the purpose of

unloading goods for hire." In the instant case it is admitted that all fishing boats indiscriminately are allowed to land at the defendant's dock for the purpose of selling and unloading their wares, and that steamers generally are allowed to load fish at its wharf for carriage to the markets of the world, and that a wharfage charge of $1 per ton was charged and collected by the defendant for all outgoing freight so handled over its wharf. Also in this case the trial court held "That the defendant is liable for the payment of the license fee or tax of ten cents per ton on freight handled on its wharf at Fairbanks, consigned and belonging to persons or corporations other than the defendant herein," and again approved the instruction given by the trial court in the Sesnon Case to the effect, "If they only landed freight for their own purposes, for their own uses, why, then, of course, it would be a private wharf, and would not be subject to a license," and then concludes, "We think it should be held that a wharf is a public wharf within the meaning of the statute, if the public are allowed to use it."

This last quotation is not only the last word of our Court of Appeals on this subject, but is, I think, final and determinative of the questions involved here.

I therefore conclude that the wharf operated by the defendant is a public wharf within the contemplation of section 176, C.L.A.1933, and that all outgoing freight handled by it belonging to persons or corporations other than the defendant herein is subject to the tax of 10 cents per ton. Findings and judgment may be prepared accordingly.